P Send

DOCKETED ON CM
entered
JUN 20 2007
BY / 085

FILED
CLERK, U.S. DISTRICT COURT
JUN 20 2007
CENTRAL DISTRICT OF CALIFORNIA
BY / DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT TUR d/b/a LOS ANGELES NEWS SERVICE,<br><br>Plaintiff,<br><br>vs.<br><br>YOUTUBE, INC.<br><br>Defendant. | CV 06-4436 FMC (AJWx)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION OF DEFENDANTS FIRST AFFIRMATIVE DEFENSE OF DMCA SAFE HARBOR<br><br>#81 |

This matter is before the Court on Plaintiff's Motion for Summary Adjudication of Defendant's First Affirmative Defense of DMCA Safe Harbor, (docket no. 16). The Motion came on regularly for hearing before the Court on June 18, 2007. The parties were in possession of the Court's Tentative Ruling. Upon consideration of the parties submissions, brief by amicus, the arguments of counsel and the case file, the Court hereby DENIES Plaintiff's Motion.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff Robert Tur ("Plaintiff" or "Tur") is an award-winning helicopter pilot and journalist who does business under the name Los Angeles News Service ("LANS"). (Pl.'s Stmt. of Genuine Issues ¶ 19; Def.'s Stmt. of Genuine

Case 2:06-cv-04436-FMC-AJW   Document 81   Filed 06/20/07   Page 2 of 6   Page ID #:29

Issues ¶ 1.) LANS licenses and sells news video, videotapes, photographs, and other products used by other news operations for all media, including television, cable, motion pictures, the Internet, and print media. (Def.'s Stmt. of Genuine Issues ¶ 3.) Tur owns copyrights in certain videotaped footage of newsworthy events which took place in the early 1990s, including footage of the beating of truck driver Reginald Denny at the commencement of the infamous 1992 Los Angeles riots. (Decl. of Tur ¶ 4; Def.'s Stmt. of Genuine Issues ¶ 5.)

Defendant YouTube, Inc. ("Defendant" or "YouTube") operates a website where users may post audio-visual content for viewing via "streaming." (Def.'s Stmt. of Genuine Issues ¶ 4.)[1] The website currently contains more than ten million video clips and is accessed by tens of millions of users a month. (Decl. of Chen ¶ 3; Pl.'s Stmt. of Genuine Issues ¶ 2.) YouTube does not charge its users to upload or view clips. (Decl. of Chen ¶ 3, Pl.'s Stmt. of Genuine Issues ¶ 4.)

On July 14, 2006, Tur filed this action for copyright infringement and unfair competition against YouTube, claiming that clips of his copyrighted video footage had been uploaded to the website and viewed by and/or distributed to the public without his authorization. Tur seeks both damages and injunctive relief. YouTube filed its Answer on October 11, 2006.

Plaintiff's Motion asks this Court to determine that YouTube does not qualify for "safe-harbor" protection, because it does not meet one of the myriad statutory elements required to qualify for safe harbor protection under the Digital Millennium Copyright Act ("DMCA") codified at 17 U.S.C. § 512(c).

---

[1] As YouTube's founder explains, this content includes home-made footage of all sorts, from stand-up routines to video diaries, delivery-room footage, amateur musical performances, and eyewitness footage from Hurricane Katrina and the Iraq War. Decl. of Chen at ¶ 6.

## STANDARD OF LAW

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(c)). Where the nonmoving party will have the burden of proof at trial, the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case. *See id.; see also Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its burden of persuasion at trial."). If the moving party meets its initial burden, the nonmoving party must then set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987); *see also Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006) ("Material facts are those which may affect the outcome of the

case.") (internal citations omitted). In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31; *see also Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492-93 (9th Cir. 1995). The evidence presented by the parties must be admissible. Fed. R. Civ. P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989).

## DISCUSSION

### I. The DMCA and Congressional "Safe Harbors"

Title II of the DMCA, also known as the Online Copyright Infringement Liability Limitation Act ("OCILLA"), was enacted in 1998 "to facilitate cooperation among Internet service providers and copyright owners 'to detect and deal with copyright infringements that take place in the digital networked environment.'" *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quoting S. Rep. 105-190, at 20 (1998); H.R. Rep. 105-551, pt. 2, at 49 (1998)). It provides for four distinct "safe harbors," under which the liability of an online service provider may be strictly limited to prospective injunctive relief, in the form of blocking ongoing access to the infringing content. 17 U.S.C. §§ 512 (a)-(d), (j).[2] As the Ninth and other judicial circuits have recently noted, the OCILLA does not purport to create separate standards for assessing claims of

---

[2] The four "safe harbor" provisions are directed to (1) transitory digital network communications, 17 U.S.C. § 512(a); (2) system caching, 17 U.S.C. § 512(b); (3) information residing on systems or networks at the direction of users, 17 U.S.C. §512(c); (4) information location tools, 17 U.S.C. §512(d).

copyright infringement against online entities, but rather provides a partial defense thereto upon a showing that all of the statutory prerequisites (discussed below) are met. *See Ellison*, 357 F.3d at 1077 ("Far short of adopting enhanced or wholly new standards to evaluate claims of copyright infringement against online service providers, Congress provided that OCILLA's 'limitations of liability apply if the provider is found to be liable *under existing principles of law*.'") (quoting S. Rep. 105-190, at 19) (emphasis in *Ellison*)); *CoStar Group, Inc. v. LoopNet, Inc.*, 373 F.3d 544, 555 (4th Cir. 2004) ("The DMCA has merely added a second step to assessing infringement liability for Internet service providers, after it is determined whether they are infringers in the first place under the preexisting Copyright Act.").

## II. Tur's Motion

Tur's motion is predicated on YouTube's purported inability to establish just one of these elements, to wit, its non-receipt of any "financial benefit" as a result of the alleged infringing activity under 17 U.S.C. § 512(c)(1)(B). Tur alleges that YouTube necessarily received a financial benefit from allowing its users to upload and view his copyrighted footage, because it displays "banner advertising" during the time that clips are played. (*See* Pl.'s Mot. at 8; Pl.'s Opp'n at 3.) However, as the statute makes clear, a provider's receipt of a financial benefit is only implicated where the provider also "has the right and ability to control the infringing activity." 17 U.S.C. § 512(c)(1)(B), *See Perfect 10, Inc. v. CCBill LLC.*, 2007 WL 1557475 at *11. Tur has not presented any evidence to the Court, despite numerous opportunities to do so, that establishes that YouTube had the right and ability to control the allegedly infringing activity. Accordingly, Tur's Motion is DENIED.

5

### III. CONCLUSION

Tur's motion for summary judgment (docket no. 16) is DENIED.

**IT IS SO ORDERED.**

June 20, 2007

*Florence-Marie Cooper*

FLORENCE-MARIE COOPER, Judge
UNITED STATES DISTRICT COURT